1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11  LINDA VINCENT as Executrix of the
    Estate of JOHN G. VINCENT,
12
                     Plaintiff,
13
14              v.

15  PNC MORTGAGE, INC. and Does 1
    through 50, inclusive,
16
                     Defendants.
17

No.: 14-cv-00833-KJM-CMK

ORDER

18          This matter is before the court on the motion by defendant PNC Bank, N.A.

19  (erroneously sued as PNC Mortgage, Inc.) to dismiss plaintiff Linda Vincent's Complaint.

20  (Def.'s Mot. to Dismiss, ECF 5.)  Plaintiff opposes the motion.  (Pl.'s Opp'n, ECF 6.)  The court

21  decided the matter without a hearing.  As explained below, the court DENIES in part and

22  GRANTS in part defendant's motion.

23  I.      FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

24          The claims in this case arise out of defendant's alleged wrongful foreclosure on the

25  property of plaintiff's deceased husband.  (*See* Def.'s Notice of Removal, Ex. A, Compl., ECF 1

26  ("Compl.") ¶ 47.)   "Plaintiff is the executrix of the Estate of John G. Vincent, deceased [("the

27  Decedent")]."  (*Id.* ¶ 1.)  The property at issue was located in Chilcoot, California ("Subject

28  /////

1

1   Property").  (*Id.* ¶ 2.)  Defendant was the servicer of the loan on the Subject Property.  (*Id.* ¶ 3.)

2   Plaintiff has also sued several Doe defendants.[1]  (*See id.* at 1.)

3          The Decedent purchased the property in 2005 and took out a loan in the amount of

4   $304,000 on the property, with monthly payments of $1,550.80 ("Subject Loan").  (*Id.* ¶¶ 10–11.)

5   The Subject Loan was secured by a deed of trust ("DOT"), recorded in 2005.  (*Id.* ¶ 11.)  At the

6   time the Decedent took out the mortgage, he was not required to advance funds into an escrow

7   account to pay for property taxes and insurance ("impound account"), but the DOT permitted "an

8   impound requirement subject to the Real Estate Settlement Procedures Act" ("RESPA"), 12

9   U.S.C. § 2601, *et seq.*  (*Id.* ¶ 12.)  Plaintiff alleges "the [p]roperty taxes on the Subject Property

10  were approximately $4,037.54" per year.  (*Id.* ¶ 13.)

11         In 2008, because the economic downturn "severely reduced" the Decedent's

12  income (*id.* ¶ 14), the Decedent contacted Lassen County (the "County") seeking relief from

13  property taxes (*id.* ¶ 15).  The Decedent believed he did not need to make his April 2008 payment

14  during that process.  (*Id.* ¶ 16.)  In June 2008, the Decedent sent a check "in the approximate

15  amount of $2,018 to the Lassen County Treasurer . . . representing the taxes due in April 2008."

16  (*Id.* ¶ 17.)  However, in July 2008, the County returned the check, stating the check did not

17  provide for penalties that had accrued.  (*Id.*)  Although the Decedent applied for an installment

18  plan with the County, the County issued a notice on July 25, 2008 to the Decedent, stating the

19  property taxes were in default.  (*Id.*)

20         In September 2008, the Decedent sent a payment in the amount of $1,550.80

21  representing the monthly payment for the mortgage, and defendant's predecessor ("Bank")

---

22  [1] Plaintiff identifies a number of Doe defendants.  The Ninth Circuit provides that
23  "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir.
24  1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in the original).  Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear
25  that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at 642).  Plaintiff is further warned that Federal Rule
26  of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is
27  applicable to Doe defendants.  *See Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604, at * 1–3 (E.D. Cal. Aug. 31, 2011); *also Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S.
28  Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

accepted it.  (*Id.* ¶ 20.)  In the same month, however, the Bank sent an escrow account statement to the Decedent, requiring monthly payments of $3,063.90.  (*Id.* ¶ 21.)  The Decedent alleges the new amount was based "on the false assumption that his property taxes were $8,075.08 per year, instead of the actual amount of $4,037.54 per year."  (*Id.*)  When the Decedent contacted the Bank about the alleged miscalculation, the Bank told the Decedent to apply for mortgage relief.  (*Id.* ¶ 22.)

The Decedent continued tendering the original amount of $1,550.80 in October and November 2008, and the Bank accepted those payments.  (*Id.* ¶¶ 23–24.)  Plaintiff avers the Bank paid the County $4,698.75 for property taxes in November 2008.  (*Id.* ¶ 25.)

Beginning in December 2008, the Bank stopped accepting the Decedent's payments (*see id.* ¶¶ 26–27), and in January 2009, the Bank sent a notice, requiring a payment of "past due" amount of $7,741.96 (*id.* ¶ 28).  On March 16, 2009, a notice of default was recorded for the amount of $6,203.20; this amount represented "the exact amount of total payments [the Decedent] had attempted to make between December 2008 and March 2009 and rejected by [d]efendants."  (*Id.* ¶ 31.)

In April 2009, the Decedent spoke with a Bank representative, who acknowledged the mistake in calculating the property taxes and promised to send the new amount to plaintiff's attorney.  (*Id.* ¶¶ 32–33.)  The Decedent never received the re-calculated amount.  (*Id.* ¶ 33.)  Moreover, in August 2009, a notice of trustee's sale was recorded with a sale date of September 16, 2009.  (*Id.* ¶ 34.)  "In the ensuing months, [the Decedent] attempted to reach a modification agreement with [defendant] . . . to maintain ownership of the Subject Property," but defendant informed the Decedent "that he did not qualify for a modification."  (*Id.* ¶ 36.)  During the time when the Decedent tried to work out a modification plan, he was never told what his payments were.  (*Id.* ¶ 37.)  But when the Decedent contacted defendant in early July 2010, he was told "that the monthly payments on the Subject Loan had been returned to $1,550.80."  (*Id.*)  Eventually, the Subject Property was sold on September 7, 2010.  (*Id.* ¶ 38.)  Plaintiff concludes that if defendant had told the Decedent that his payments had returned to $1,550.80 earlier, the Decedent would have been able to save the Subject Property.  (*Id.* ¶ 37.)

1    Plaintiff commenced this action in the Lassen County Superior Court on

2  January 27, 2014.  (*See* Compl., ECF 1.)  The Complaint alleges two claims: (1) breach of

3  contract and (2) violations of California's Business and Professions Code section 17200, *et seq.*

4  ("UCL").  (*Id.* at 9, 11.)  Defendant removed the case on April 3, 2014, on the basis of diversity

5  jurisdiction under 28 U.S.C. § 1332.  (ECF 1 at 1–2.)  Defendant now moves to dismiss plaintiff's

6  Complaint.  (ECF 5.)  Plaintiff opposes the motion (ECF 6), and defendant has replied (Def.'s

7  Reply, ECF 8).

8  II.    LEGAL STANDARD ON A MOTION TO DISMISS

9    Federal courts exercising diversity jurisdiction apply the substantive law of the

10  state in which they are located, here California, and federal procedural rules.  *Erie R.R. Co. v.*

11  *Tompkins*, 304 U.S. 64, 78 (1938).  Under Federal Rule of Civil Procedure 12(b)(6), a party may

12  move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A

13  court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts

14  alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

15  (9th Cir. 1990).

16    Although a complaint need contain only "a short and plain statement of the claim

17  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to

18  dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

19  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

20  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more

21  than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

22  conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting

23  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

24  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

25  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

26  interplay between the factual allegations of the complaint and the dispositive issues of law in the

27  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

28  /////

4

1  In making this context-specific evaluation, this court "must presume all factual

2  allegations of the complaint to be true and draw all reasonable inferences in favor of the

3  nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule

4  does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*,

5  478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict

6  matters properly subject to judicial notice," or to material attached to or incorporated by reference

7  into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

8  Finally, a party may raise a statute of limitations argument in a motion to dismiss

9  if it is apparent from the face of the complaint that the complaint was not timely filed and that

10 plaintiff will be unable to prove facts to establish the timeliness of the claim. *Von Saher v.*

11 *Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010).

12 III.    JUDICIAL NOTICE

13 As an initial matter, plaintiff requests the court take judicial notice of the DOT

14 recorded on September 29, 2005, with the County Recorder's Office as instrument number

15 2005-09271. (Pl.'s Req. Judicial Notice, ECF 7.)

16 The court GRANTS plaintiff's request because the DOT is a matter of public

17 record. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take

18 judicial notice of undisputed matters of public record . . . .").

19 IV.    DISCUSSION

20 Defendant makes four principal arguments in support of its Motion to Dismiss:

21 First, the entire Complaint is time-barred. (ECF 5-1 at 5–6.) Second, plaintiff has no standing to

22 sue as an Executrix of the Decedent's Estate. (*Id.* at 6.) Third, plaintiff's breach of contract

23 claim cannot proceed because the Complaint's allegations do not meet the elements of the claim.

24 (*Id.* at 6–8.) Finally, plaintiff's UCL claim cannot proceed because plaintiff has no standing and

25 because the allegations do not satisfy any of the legal grounds for the claim. (*Id.* at 8–9.) The

26 court addresses defendant's arguments by first addressing whether plaintiff has standing as an

27 Executrix; and second, whether the claims are time-barred and whether the Complaint's

28 allegations are sufficient to meet the requirements of plaintiff's substantive claims.

1    A.    Standing

2         Defendant argues plaintiff does not allege she has been appointed as the Executrix

3    of the Decedent's Estate, and therefore has no standing to sue on behalf of the Decedent.  (ECF

4    5-1 at 6.)  Plaintiff responds she has specifically alleged she is the executrix of the Decedent's

5    Estate.  (ECF 6 at 4.)

6         Rule 17(a)(1) requires that every action "be prosecuted in the name of the real

7    party in interest."  The rule lists an executor as an appropriate party in interest.  FED. R. CIV. P.

8    17(a)(1)(A).   In diversity actions, whether a plaintiff is the proper party to maintain the action is

9    determined by state law.  *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1094–95 (9th Cir.

10   2004).  The real party in interest is the person who, under the substantive law, has the right to sue.

11   *See U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986).

12        Here, plaintiff's allegations of executorship are sufficient.  The complaint

13   explicitly alleges that "plaintiff is the executrix of the Estate of John G. Vincent."  (Compl. ¶ 1.)

14   Defendant does not dispute that plaintiff, as an executrix, can pursue her husband's potential

15   claims under California law.  Therefore, at this stage of the litigation and in light of defendant's

16   narrow argument, the court, accepting plaintiff's allegations as true, finds them sufficient to

17   survive a motion to dismiss.  *See Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F.

18   Supp. 2d 1095, 1101 (C.D. Cal. 2006); *see also* FED. R. CIV. P. 9(a)(1)(A)–(C) (providing "a

19   pleading need not allege" "a party's capacity to sue . . .; [or] a party's authority to sue").

20   B.    Breach of Contract

21        Defendant makes two main arguments:  first, that plaintiff's breach of contract

22   claim is time-barred (ECF 5-1 at 5), and second, she has not alleged the necessary elements for a

23   breach of contract claim (*id.* 6–8).  The court addresses these arguments in turn.

24   1.    Statute of Limitations

25        Defendant argues plaintiff's breach of contract claim is time-barred because the

26   alleged breach occurred in September 2008, and thus, the four-year statute of limitations

27   applicable to a breach of contract claim ran in September 2012, more than a year before the

28   complaint was filed.  (*Id.* at 5.)

1    Plaintiff responds that the real harm "was the loss of the home, damage to [the

2    Decedent's] credit, and increased interest and arrears that [the Decedent] would not have

3    otherwise incurred but for the total breach of the [DOT]." (ECF 6 at 4.)  Accordingly, plaintiff

4    states the statute of limitations did not start to run until the Decedent "suffered the last of his

5    damages: the sale of the Subject Property," which occurred in September 2010. (*Id.*)

6    Federal courts apply state statutes of limitations in diversity actions. *Guar. Trust*

7    *Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).  A statute of limitations begins to run when the

8    claim accrues. CAL. CIV. PROC. CODE § 312.  As a general rule, a claim accrues when the last

9    element required for that claim occurs. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806

10   (2005).  An important exception to this general rule is the "discovery rule," "which postpones

11   accrual of a [claim] until the plaintiff discovers, or has reason to discover, the [claim]." *Id.* at

12   807.  When damages are a required element of a claim, the claim does not accrue until the

13   damages are sustained. *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886

14   (2000).  To start the accrual, however, the damages must be of a type recoverable under the

15   particular claim involved. *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 317

16   (2006).

17   In California, an action for breach of a written contract is subject to a four-year

18   statute of limitations. CAL. CIV. PROC. CODE § 337.  A claim for breach of contract, as a general

19   rule, accrues when the contract is breached and a plaintiff suffers actual harm. *See Romano v.*

20   *Rockwell Internat., Inc.*, 14 Cal. 4th 479, 488–89 (1996).

21   Here, plaintiff limits the actual harm to the loss of the Subject Property. (ECF 6 at

22   4.)  This is the last of plaintiff's damages, plaintiff reasons. (*Id.*)  Plaintiff lost the Subject

23   Property on September 7, 2010. (Compl. ¶ 38.)  Plaintiff commenced this action on January 27,

24   2014. (*See id.* at 1.)  Accordingly, plaintiff's breach of contract claim is timely as it was filed

25   within the four-year statutory period.  However, plaintiff may incorporate the clarification, that

26   the actual harm is limited to the loss of the Subject Property, into the amended complaint.

27   /////

28   /////

1          2.       Sufficiency of the Allegations

2                  Defendant argues plaintiff's breach of contract claim cannot proceed because

3  plaintiff's allegations do not meet the elements of a breach of contract claim.  (ECF 5-1 at 6.)

4  Specifically, defendant argues plaintiff's allegations are insufficient to meet the existence of the

5  contract element because plaintiff does not attach the contract to the Complaint.  (*Id.* at 7.)

6  Plaintiff's allegations do not show the Decedent performed his part of the bargain as he did not

7  pay the required property taxes.  (*Id.*)  Finally, defendant argues, plaintiff's allegations do not

8  show the Decedent suffered any damages as a result of the alleged miscalculation.  (*Id.* at 7–8.)

9                  Plaintiff responds she identified the DOT as the relevant contract and has asked the

10  court to take judicial notice of it; thus, with the taking of notice, the DOT is properly before the

11  court.  (ECF 6 at 6.)  As to performance, plaintiff responds the Decedent "was under no duty to

12  pay any amount for which he was not billed."  (*Id.* at 7.)  Finally, as to causation, plaintiff

13  responds that "the damages begin with the improper calculations, snowball through the refusal to

14  accept payment . . . and end with the foreclosure . . . ."  (*Id.*)

15                  The necessary elements of a breach of contract claim are: (1) the contract;

16  (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach of the contract;

17  and (4) damages resulting from defendant's breach.  *San Mateo Union High Sch. Dist. v. Cnty. of*

18  *San Mateo*, 213 Cal. App. 4th 418, 439 (2013).

19                  Here, the court finds plaintiff's allegations are sufficient to state a claim for breach

20  of contract.  First, the existence of a contract element is satisfied because plaintiff alleges the

21  Decedent and the Bank entered into a "Loan Agreement."  (Compl. ¶ 51.)  While it may not be

22  clear from that language to what agreement plaintiff refers, plaintiff in the opposition brief and in

23  several places in the Complaint specifies that the contract plaintiff refers to is the DOT.  (ECF 6

24  at 5–6.)  Plaintiff may incorporate the clarification, that the contract plaintiff refers to is the DOT,

25  into the amended complaint.

26                  Second, the performance element is satisfied because plaintiff alleges the Decedent

27  tendered the monthly payments required up to the date when defendant refused to accept the

28  payments.  (*See id.* ¶ 52.)

8

Third, the breach element is satisfied because plaintiff's complaint sets forth six specific instances of defendant's alleged breaches of the contract.  (*Id.* ¶¶ 53–54.)  Specifically, plaintiff alleges defendant:

> i.  Erroneously calculated the property taxes due on the Subject Property as approximately $8,000.00 instead of the correct approximation of $4,000.00;
>
> ii.  Erroneously doubled [the Decedent's] monthly payments based on that erroneous tax calculation;
>
> iii.  Refused to accept [the Decedent's] normal payments of $1,550.80 for the months of December 2008, and January through March 2009[;]
>
> iv.  Failed to correct the mistake its agent admitted [defendant] had made;
>
> v.  Failed to inform [the Decedent] that his monthly payment had been returned to its original amount until approximately two months prior to the foreclosure; and
>
> vi.  Foreclosed on the Subject Property based on an erroneous determination of default that was based solely on [d]efendant['s] improper, incorrect, and erroneous escrow calculation.

(*Id.*)

At this stage of litigation, these allegations are sufficient to meet the breach element.

Finally, the damages element is also satisfied.  Plaintiff alleges that as a result of defendant's breach, the Decedent "suffered injury, including but not limited to loss of his entire interest in the Subject Property[,] damage to his credit, and increased interest and arrears that he would not have otherwise incurred."  (*Id.* ¶ 54.)

Accordingly, because plaintiff's allegations are sufficient to state a claim for breach of contract, the court DENIES defendant's Motion to Dismiss.

C.    UCL

Defendant makes three arguments in support of its Motion to Dismiss plaintiff's UCL claim.  First, plaintiff's UCL claim is time-barred (ECF 5-1 at 5–6).  Second, plaintiff has no standing under the UCL.  (*Id.* at 8.)  Finally, plaintiff has not stated a predicate claim for UCL to apply.  (*Id.*)

9

1    As to the statute of limitations argument, plaintiff responds because the same harm

2  from the breach of contract claim forms the basis of the UCL claim, plaintiff's UCL claim is

3  timely.  (ECF 6 at 4.)  As to standing,  plaintiff responds her damages allegations are sufficient to

4  have standing under the UCL.  (*Id.* at 8.)  Finally, as to defendant's predicate claim argument,

5  plaintiff responds her breach of contract claim is sufficient, or in the alternative, the allegations

6  are sufficient to state a UCL claim under the "unfair" prong.  (*Id.*)  The court addresses these

7  arguments in turn.

8         1.      Statute of Limitations

9    The statute of limitations for a UCL claim is four years.  CAL. BUS. & PROF. CODE

10 § 17208.  California courts apply common law accrual rules to UCL claims.  *See Aryeh v. Canon*

11 *Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1193 (2013).

12    Here, the court finds plaintiff's UCL claim predicated on her breach of contract

13 claim is timely.  Because plaintiff bases her UCL claim on her breach of contract claim (*see*

14 Compl. ¶ 57), the court's analysis as set forth above in the statute of limitations section of the

15 breach of contract claim applies here.  Because the court finds that plaintiff's breach of contract

16 claim is timely, plaintiff's UCL claim is timely to the same extent.

17    As to plaintiff's UCL claim predicated on the "unfair" prong, the court finds

18 defendant has not met its burden of showing that plaintiff's entire UCL claim based on the

19 "unfair" prong is untimely.  It is not enough to show that some of the allegedly "unfair" acts are

20 time-barred; rather, defendant must have shown that each alleged "unfair" act is time-barred for

21 the entire claim to be time-barred.  *See Pointe San Diego Residential Cmty., L.P. v. Procopio,*

22 *Cory, Hargreaves & Savitch, LLP*, 195 Cal. App. 4th 265, 274 (2011).

23         2.      Standing under the UCL

24    To have standing under the UCL, a plaintiff must have "suffered injury in fact"

25 and "lost money or property."  CAL. BUS. & PROF. CODE § 17204.  Because the "injury in fact"

26 requirement under the UCL is the same as that for federal standing, to establish "injury in fact"

27 here, a plaintiff must establish that there was "an invasion of a legally protected interest which is

28 (a) concrete and particularized . . . ; and (b) actual or imminent, not conjectural or hypothetical."

1    *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (internal quotation marks and

2    citations omitted).  However, unlike the federal "injury in fact" requirement, to have standing

3    under the UCL, plaintiff must prove an economic injury.  *Id.* at 323.  Lost money or property "is

4    itself a classic form of injury in fact."  *Id.*

5          Here, the court finds the standing requirement satisfied.  Simply stated: "Plaintiff

6    does plead that [the Decedent] lost his entire interest in the Subject Property . . . ."  (ECF 6 at 8.)

7    Loss of property, being an economic injury, satisfies the standing requirement under the UCL.

8    *See Kwikset Corp.*, 51 Cal. 4th 310, 323 (2011).

9          3.        Sufficiency of the Allegations

10          The UCL prohibits unfair competition, which is defined as prohibiting any

11    "unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  The

12    statute's language has been construed as prohibiting three distinct types of practices: (1) unlawful

13    acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices.  *Cel-Tech*

14    *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

15          In determining whether a practice is "unlawful" within the meaning of the statute,

16    courts consult federal, state, local, or common law as a predicate for a section 17200 violation.

17    *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Hence, to allege a claim

18    under the "unlawful" prong, a plaintiff must show a violation of some independent law.  *Id.*

19    (section 17200 "borrows" violations of other laws and treats them as unlawful practices

20    actionable separately under section 17200).  "[A] breach of contract may form the predicate for a

21    section 17200 claim, provided it also constitutes conduct that is unlawful, or unfair, or

22    fraudulent."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)

23    (alteration in original) (internal quotation marks and citation omitted).

24    /////

25    /////

26    /////

27    /////

28    /////

Over the years, California courts have provided several definitions of "unfair" under the UCL.  They are:

1.  "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).

2.  "'[U]nfair' business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (internal citation and quotation marks omitted).

3.  An unfair business practice means "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003).

Here, plaintiff cannot bring a UCL claim based on her alleged breaches of contract because plaintiff has not satisfied any of the available tests by pleading that the breaches "are independently unlawful, unfair, or fraudulent." *Sybersound Records, Inc.*, 517 F.3d at 1152. Plaintiff merely states in a conclusory fashion that "[d]efendants violated the . . . [c]ommon [l]aw prohibition against breaching contracts . . . ."  (Compl. § 57.)

Hence, the court grants defendant's Motion to Dismiss plaintiff's UCL claim to the extent the claim is predicated on her breach of contract claim.  Plaintiff is granted leave to amend if she can do so consonant with Rule 11.

As to plaintiff's UCL claim predicated on the "unfair" prong, the court finds plaintiff's allegations sufficiently pled to satisfy the unfairness test described in *Daugherty*.  144 Cal. App. 4th at 839.  That test is the most relevant in this case because this case involves a consumer alleging unfair conduct by a business.  *See Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 381 (2013) (noting that in consumer actions, the balancing test has not been

disapproved).  In alleging six instances of unfair conduct by defendant, plaintiff alleges there was no countervailing benefit to consumers.  (Compl. ¶ 58.)  Specifically, plaintiff alleges "it was unfair for [d]efendants":

    a.   [T]o overcharge [the Decedent] for any amounts [d]efendants may have paid to cover the [Decedent's] remaining property tax deficiency for 2008;

    b.   [T]o miscalculate [the Decedent's] monthly payments based on its original miscalculation of [the Decedent's] property taxes, to refuse to listen to [the Decedent's] attempts to correct the error;

    c.   [T]o refuse to accept [the Decedent's] good faith attempts to make his normal monthly mortgage payments and then base its March 2009 default notice on the same amounts [d]efendant[] refused to accept;

    d.   [T]o recognize their error and then not to take steps to correct said error;

    e.   [T]o presumably correct the error and fail to inform [the Decedent] that his monthly payment had been restored to its original amount until it was virtually too late to correct his arrearages; and

    f.   [T]o ultimately foreclose on the Subject Property warranted solely by [d]efendants['] own error.

*Id.*

       At this stage of the litigation, plaintiff's allegations are sufficient to state a UCL claim based on the "unfair" prong of the UCL.  The court denies defendant's Motion to Dismiss plaintiff's UCL claim predicated on the "unfair" prong.[2]

V.    CONCLUSION

       For the foregoing reasons, the court orders as follows:

    1.   Defendant's Motion to Dismiss plaintiff's UCL claim predicated on the breach of contract claim is GRANTED, with leave to amend.

    2.   Defendant's Motion to Dismiss plaintiff's breach of contract claim is DENIED.

/////

---

    [2]  Because the court finds plaintiff can assert a UCL claim based on the "unfair" prong, the court does not address the "fraudulent" prong.

13

3. Defendant's Motion to Dismiss plaintiff's UCL claim predicated on the "unfair" prong is DENIED.

4. Plaintiff shall have 21 days from the date of this order to file a first amended complaint.

IT IS SO ORDERED.

DATED:  June 17, 2014.

_____
UNITED STATES DISTRICT JUDGE

14